# EXHIBIT C

Harleysville Insurance Company of Ohio
Harleysville-Atlantic Insurance Company
Harleysville-Garden State Insurance Company
Harleysville Insurance Company of New Jersey
Harleysville Mutual Insurance Company
Harleysville Preferred Insurance Company
Harleysville Pennland Insurance Company
Harleysville Worcester Insurance Company
Harleysville Insurance Company of New York
Harleysville Lake States Insurance Company

BRADFORD LAW FIRM, P.C.

FILE: _____

DATE: ___2-22-05___

## LETTER OF CERTIFICATION

February 11, 2005

B Jorgenson
South-east Claims Service Center

This is to certify that the attached is a true and correct copy of:

Commercial Umbrella Liability #BE-7E6450, all policy terms from 11/01/01 to 11/01/02,

insofar as it relates to the insurance afforded thereunder at the following location:

PO Box 97, Opelika, AL 36801, to the Named: Grady's Tire & Auto Service, Inc.,

on the date of loss 08/03/02 and purchased in Alabama.

*R. Bruce Livingston*

R. Bruce Livingston
Assistant Vice President

Harleysville Mutual Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

**COMMERCIAL UMBRELLA**
**LIABILITY POLICY**
**BE 7E6450**



# Harleysville.

Named Insured:

**GRADY'S TIRE & AUTO**
**SERVICE INC**
**P O BOX 97**
**OPELIKA AL  36801**

| | |
|---|---|
| **Account** | **7E6450** |
| **Policy Term** | **11/01/01 to 11/01/02** |
| | 12:01 A.M. Standard Time |
| **Issue Date** | **08/06/02** |
| **Reason for Issue** | **Reinstatement** |
| **Change Effective** | **07/16/02** |

For assistance please contact your agent
**MALLORY AGENCY**
at 706-884-3339

**(Agent Code 10-0369)**

---

### Reinstatement Memorandum

This policy has been reinstated with the following charge:

| | |
|---|---|
| Total Annual Premium: | $1,250.00 |
| Premium for this reinstatement: | $370.00 |
| Total Amount Due For This Reinstatement: | $370.00 |

Harleysville Mutual Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

**COMMERCIAL UMBRELLA**
**LIABILITY POLICY**
**BE 7E6450**



**Harleysville**

Named Insured:

**GRADY'S TIRE & AUTO**
**SERVICE INC**
**P O BOX 97**
**OPELIKA AL 36801**

| | |
|---|---|
| **Account** | **7E6450** |
| **Policy Term** | **11/01/01 to 11/01/02** |
| | 12:01 A.M. Standard Tim e |
| **Issue Date** | **07/22/02** |
| **Reason for Issue** | **Cancellation** |
| **Change Effective** | **07/16/02** |

For assistance please contact your agent
**MALLORY AGENCY**
at **706-884-3339**

**(Agent Code 10-0369)**

---

Cancellation Memorandum

This policy has been cancelled Pro Rata

for the following reason:

Non-Payment

The Unearned Premium Is:          $370.00
Total Return Due For This Cancellation:      $370.00

```
   BE  7E 64 50       COMMERCIAL UMBRELLA LIABILITY POLICY        BE  7E 64 50
                              DECLARATIONS
NEW BUSINESS                                                   DIRECT BILL
                        HARLEYSVILLE MUTUAL INSURANCE COMPANY
RISK NEW 11/01/01              HARLEYSVILLE PA 19438
                                                         GREENSBORO BRANCH
     GRADY'S TIRE & AUTO                  MALLORY AGENCY
     SERVICE INC                          PO BOX 1209
     P O BOX 97                           LAGRANGE GA  30241
     OPELIKA AL 36801
           11/01/01 TO 11/01/02                              10-0369
                                    AGENT'S PHONE # 706-884-3339
FORM OF BUSINESS:  CORPORATION
BUSINESS DESCRIPTION:  AUTO TIRE DEALER
================================================================================
IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
                                        ANNUAL PREMIUM:   $1,250.00
================================================================================
LIMITS OF INSURANCE:
--------------------

        AGGREGATE LIMIT                        $1,000,000
        PERSONAL AND ADVERTISING INJURY LIMIT  $1,000,000
        EACH OCCURRENCE LIMIT                  $1,000,000
RETAINED LIMIT:          $0
---------------

==================| SCHEDULE OF UNDERLYING INSURANCE |==================
                  ------------------------------------
   POLICY # BA 7E6450                 POLICY PERIOD: 11/01/01 TO 11/01/02
   ------------------------------------------
        INSURER:       HARLEYSVILLE INSURANCE
        TYPE OF INSURANCE: AUTO LIABILITY
        LIMITS OF INSURANCE:  $1,000,000 EACH ACCIDENT
   POLICY # GO 7E6450                 POLICY PERIOD: 11/01/01 TO 11/01/02
   ------------------------------------------
        INSURER:       HARLEYSVILLE INSURANCE
        TYPE OF INSURANCE: GARAGE LIABILITY
        LIMITS OF INSURANCE:  $1,000,000 AUTO EACH ACCIDENT
                              $1,000,000 OTHER THAN AUTO - EACH ACCIDENT
                              $3,000,000 OTHER THAN AUTO - AGGREGATE


   BE  7E 64 50 END 00  01 01     PAGE  1  CONTINUED              02/13/02
                  ------------------------------------

==================| SCHEDULE OF FORMS AND ENDORSEMENTS |==================
                  ------------------------------------

   NUMBER      EDITION   TITLE
   ------      -------   -----
  *PJ0001E     0895      POLICY JACKET
  *PT0410      0997      COMMERCIAL UMBRELLA LIABILITY POLICY
  *BC7105      0787      AUTO LIABILITY LIMITATION
  *BC7106      1293      GARAGE LIMITATION
  *BC7167      0591      AUTO LEASING AND RENTAL EXCLUSION
                                               CONTINUE NEXT FRAME
```

```
                                                             *** M07 ***
□   *BC7189        0997     EMPLOYER'S LIABILITY EXCLUSION
     *BC7258       0498     EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER
                            ELECTRONIC PROBLEMS
              -----------------------------------------------------

   *  ALL FORMS ARE ATTACHED.

     ================================================================================


   BE  7E 64 50 END 00  01 01        PAGE  2                          02/13/02

                                         *********************************
                     CONTROL MASTER EXTRACT

POLICY NUM  BE  7E 64 50


REC                                      RISK   QUOTE                    QTE CNT
 ID        --------- RATE STATES -------- NEW DT NUMBER   LOG NUMBER     NEW/REN
 AA CURR   AL                            20011101 7E6450BE                01 00
 AA PREV                                 20011101 7E6450BE                01 00

                                                            BILLING
           --------------UNDERWRITER COMMENTS--------------  ACCT NUM


           ----------------------DIARY INFO----------------------
               NUM  USER  BR   DATE               REASON


                                                                        UND
           --------INSURED NAME 1-------- -------INSURED NAME 2--------  INFO
 CURR TERM  $GRADY'S TIRE & AUTO            SERVICE INC

                            CONTR  BILL  PAY                            ANNL
            CO  BR  AGENT CODE STATE MTHD PLAN  -----POLICY TYPES-----  RERT
 CURR TERM  04  28  100369    AL    0           BE

           ----------------DATES---------------  TERM  ACTY   TRNS    TRNS
              EXP      EFF     END EFF  ACTIVITY  SEQ   NUM    CODE    EFF DT
 CURR     20021101  20011101 00000000  20020213  01    01     114     20011101

           -------STATUS-------- POLICY CHARGE  TOT TRANS  --RENEWAL DATES--
           CURR SUPPL PREV SUPPL  TO DATE        CHARGE    QUOTE    ISSUE
 CURR TERM  A                     1,250.00       1,250.00  00000000 00000000

           -------MANUAL RENEWAL HOLD DATA-------- -AUTOMATIC RENEWAL HOLD DATA-
                  HOLD      HOLD    RELEASE RELEASE      HOLD    RELEASE RELEASE
            ID    DATE      OPER    DATE    OPER    ID   DATE    DATE    OPER
 CURR       00000000        00000000                00000000 00000000

            LAPSE  CANC    UNVERIFIED AUD APL  MAN  REN BILL OS TRANS API UNV B-MAC
            IND    NON PAY AUD CR PREM IND PROC     TYPE     COUNT  IND AUD REINSU
 CURR TERM  0              .00                               0      Y

 AUDIT          NUM AUDIT TRAILS 03
       ACTIVITY          TRNS --A/S-- -------TRANS------- UND  STATUS
```

# Harleysville Mutual Insurance Company

355 Maple Avenue
Harleysville, Pennsylvania 19438



This policy jacket with the policy provisions, declarations or information page, and endorsements, if any, completes this policy.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions.

**Mutual Conditions**

This policy is non-assessable. Upon acceptance of this policy, the insured becomes a member of the Company but such membership shall terminate if and when the policy of insurance shall be terminated, without renewal, for any reason whatsoever. The insured shall participate in the distribution of dividends to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provision of law.

**Annual Meeting**

As a member of the Company the insured is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meeting is held in the Company's home office, Harleysville, Pennsylvania on the fourth Wednesday of April in each year at 11:00 o'clock a.m. The inclusion of this notice in this policy shall constitute notice of the time and place of the Annual meeting.

In Witness Whereof, the Company has caused this policy to be executed and attested.

*Walter R. Bateman*
President

*Roger A. Brown*
Secretary

# COMMERCIAL UMBRELLA LIABILITY POLICY

This policy has been issued in reliance upon the statements in the Declarations and in the application submitted for this insurance. Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Words and phrases in this policy that appear in quotation marks have special meanings. Refer to SECTION V - DEFINITIONS when such meanings are not defined when used.

## SECTION I - COVERAGE A AND COVERAGE B

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.

COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

1.  **INSURING AGREEMENT**

    We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of:

    a.  "Bodily injury" or "property damage" covered by this policy and caused by an "occurrence" which occurs during the policy period; or

    b.  "Personal injury" or "advertising injury" covered by this policy and caused by an "offense" committed during the policy period.

    This insurance applies anywhere in the world.

2.  **DEFENSE AND SUPPLEMENTARY PAYMENTS**

    a.  We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits," we will pay all expenses we incur.

    b.  We will have the right and duty to defend any "suit" for damages which are payable under Coverages A or B (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance," or any other available insurance, because;

        (1)  Such damages are not covered; or

        (2)  The "underlying insurance" has been exhausted by the payment of claims.

    c.  We may investigate and settle any claim or "suit" in b. above at our discretion.

    d.  Our right and duty in b. above end when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

    e.  We will pay with respect to any claim or "suit" we defend in b. above:

        (1)  All expenses we incur.

        (2)  The cost of appeal bonds and bonds to release attachments, but only for bond amounts within the "applicable limit of insurance." We do not have to furnish these bonds.

        (3)  The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings because of time off from work.

(5) All costs taxed against the insured in the "suit."

(6) Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the "applicable limit of insurance," we will not pay any pre-judgment interest based on that period of time after the offer.

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

    (a) paid, or offered to pay; or

    (b) deposited in court;

the part of the judgment that is within the "applicable limit of insurance."

These payments will not reduce the limits of insurance.

In any jurisdiction outside the United States of America (including its territories and possessions), Puerto Rico or Canada where we may be prevented by law or otherwise from carrying out this agreement:

(1) You must arrange to investigate, defend or settle any claim or "suit."

(2) You will not make any settlement without our consent.

(3) We will pay expenses incurred with our consent.

## 3. EXCLUSIONS

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

### b. Laws

Any liability or obligation of the insured under any of the following laws:

(1) Any workers' compensation or similar law, however, this exclusion does not apply to liability of others assumed by you under any valid contract in existence at the time of "occurrence";

(2) Any unemployment compensation, disability benefits, or similar law;

(3) Any unfair trade practices or similar law; or

(4) Any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

### c. Employment Related Practices

Any liability, defense costs, fines or damages arising out of any employment related practices, policies, acts or omissions, including but not limited to:

(1) Refusal to employ;

    **(2)** Termination of employment;

    **(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harrassment, humiliation or discrimination; or

    **(4)** Consequential "bodily injury" or "personal injury" as a result of any of the above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation of the insured to share damages with or to repay someone else who must pay damages because of the injury.

**d.** **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**e.** **Contractual Liability**

"Bodily injury," "property damage," "personal injury" or "advertising injury" for which the insured assumed liability under a contract or agreement if the damage or injury occurred prior to the effective date of the contract or agreement.

**f.** **Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, including loading or unloading or entrustment to others of watercraft over 50 feet in length or any aircraft:

    **(1)** Owned by any insured;

    **(2)** Chartered without crew by or on behalf of any insured; or

    **(3)** Owned and operated by an "employee" of any insured.

This exclusion does not apply to:

    **(1)** A watercraft while ashore on premises you own or rent;

    **(2)** Liability assumed under any contract or agreement; or

    **(3)** Liability covered by valid and collectible "underlying insurance" for the full limits shown, and then only for such liability for which coverage is afforded under the "underlying insurance."

**g.** **Advertising Injury**

"Advertising injury" arising out of:

    **(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

    **(2)** The failure of goods, products or services to conform with advertised quality or performance;

    **(3)** The wrong description of the price of goods, products or services; or

    **(4)** An "offense" committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**h.** **Falsity, Prior Publication, Willful Violation**

Personal injury" or "advertising injury":

(1) Arising out of oral, written, televised or videotaped publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral, written, televised or videotaped publication of material whose first publication took place before the beginning of the policy period. All "personal injury" or "advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded; or

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.

**I.    Damage to Property**

"Property damage" to property:

(1) Owned or occupied by or rented to any insured;

(2) Used by any insured; or

(3) In the care, custody or control of any insured or as to which any insured is for any purpose exercising physical control.

Paragraph (1) of this exclusion does not apply to damage to premises rented to you arising out of fire, lightning, explosion, smoke or leakage from fire protection systems which occurs during the first thirty (30) days after the date such premises were first rented to you.

**J.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**k.    Damage to Your work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**I.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**m.   Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**n.   Pollution**

(1)   Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)   That are, or that are contained in any property that is:

(I)   Being transported or towed by, handled, or handled for movement into, onto or from, the "auto";

(II)   Otherwise in the course of transit by or on behalf of the insured; or

(III)   Being stored, disposed of, treated or processed in or upon the "auto";

(b)   Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

(c)   After the pollutants or any property in which the pollutants are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph (1)(a) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if the pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs (1)(b) and (1)(c) above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to pollutants not in or upon an "auto" if:

(I)   The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

(II)   The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn, or damage.

(2)   Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; however, this does not apply to "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

> **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or
>
> **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Paragraphs 2(a) and 2(d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

> **(3)** Any loss, cost or expense arising out of any:
>
> > **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or
> >
> > **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
>
> **(4)** Any liability caused by pollutants excluded by "underlying insurance." This exclusion applies in addition to items n.(1) through n.(3) above and it also overrides the exceptions in items n.(1) and n.(2).

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.

**o.  Asbestos**

"Bodily injury," "personal injury" or "property damage" arising out of the "asbestos hazard."

We shall have no obligation under this policy:

> **(1)** To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the "asbestos hazard"; or
>
> **(2)** To pay, contribute to or indemnify another for damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any injury or damage, or in complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion:

"Asbestos hazard" means:

> **(1)** An actual exposure or threat of exposure to the harmful properties of "asbestos," or
>
> **(2)** The presence of "asbestos" in any place, whether or not within a building or structure.

"Asbestos" means the mineral in any form, including but not limited to fibers or dust.

**p.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

> **(1)** Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

q. **Nuclear Energy Liability**

Injury, sickness, disease, death or destruction:

(1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material," if (i) the "nuclear material" is at any "nuclear facility" owned by or operated by or on behalf of an insured or has been discharged or dispersed therefrom; (ii) the "nuclear material" if contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or (iii) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (q.3 iii) applies only to injury to or destruction of property at such "nuclear facility."

As used in or applicable to this exclusion, the following are defined terms having special meaning:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "byproduct material," and (b) resulting from the operation by any person or organization of any "nuclear facility" included under paragraph (a) or (b) of the definition of "nuclear facility."

"Nuclear facility" means:

(1) Any "nuclear reactor";

(2) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(3) Any equipment or device used for processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25

grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(4)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured and each of the following is also an insured:

      **(1)** Any subsidiary corporation of such organization, including any subsidiary corporation thereof:

         **(a)** Existing at the effective date of this policy; or

         **(b)** Acquired or newly formed during the policy period.

      **(2)** Any other corporation controlled and actively managed by such organization or any such subsidiary:

         **(a)** At the effective date of this policy; or

         **(b)** If the control and active management thereof was acquired during the policy period.

   However, coverage under d.(1) and (2) above does not appy to:

      **(i)** "Bodily injury" or "property damage" that occurred before you acquired or formed the organization; or

      **(ii)** "Personal injury" or "advertising injury" arising out of an "offense" committed before you acquired or formed the organization.

2. Each of the following is also an insured:

   **a.** As respects the "auto hazard:"

      **(1)** Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and

      **(2)** Any of your executive officers, directors, partners, "employees" or stockholders, operating an "auto" you do not own, hire or borrow while it is being used in your business.

None of the following is an insured under (1) or (2) above:

(1) Any person employed by or engaged in the duties of an auto sales agency, repair shop, service station, storage garage or public parking place that you do not operate;

(2) The owner or lessee of an "auto" hired by or for you or loaned to you, and any agency or employee of such owner or lessee.

**b.** As respects aircraft:

Anyone using an aircraft chartered with crew by you or on your behalf and anyone legally responsible for its use except:

(1) The owner or crew of the aircraft or any person operating such aircraft;

(2) Any manufacturer of the aircraft or any of its parts;

(3) Any sales, service or repair company;

(4) Any airport or hanger operator; or

(5) Any employee of (2), (3) or (4) above.

**c.** Except as respects aircraft and the "auto hazard":

(1) Your executive officers, "employees," directors or stockholders while acting within the scope of their duties; and

(2) Any person or organization while acting as real estate manager for you.

**d.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**e.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**f.** Any person or organization for whom you agreed in writing to provide this insurance for operations you perform or facilities you own or use. This insurance is subject to your "applicable underlying limits" for such operations or facilities.

**g.** Any other person or organization insured under any policy of the "underlying insurance." This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

No person is an insured as respects "bodily injury" to a fellow "employee" unless insurance for such liability is afforded by the "underlying insurance."

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay for all damages:

   a. Included in the "products-completed operations hazard";

   b. Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you and not covered by any workers' compensation or similar law; or

   c. Arising out of the rendering or failure to render any professional services which are covered under this policy.

The Aggregate Limit applies separately to a., b. and c.

3. The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4. Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence."

The limits of this insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months. The policy period begins with the effective date shown in the Declarations. If the policy period is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period.

## SECTION IV - CONDITIONS

1. **APPEALS**

   a. If the insured or the insured's "underlying insurer" elects not to appeal a judgment which exceeds the "applicable underlying limit," we may do so.

   b. If we do, we will pay all costs of the appeal. We will also pay all costs on appeals related to the defense of the insured as provided in SECTION I Item 2. DEFENSE AND SUPPLEMENTARY PAYMENTS. These sums are in addition to the "applicable limit of insurance." In no event shall our liability for "ultimate net loss" exceed the "applicable limit of insurance."

2. **BANKRUPTCY**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this insurance.

3. **CANCELLATION**

   a. The first Named Insured may cancel this insurance by mailing or delivering to us advance written notice of cancellation.

   b. We may cancel this insurance by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 60 days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels the refund will be pro rata less 10% of the pro rata unearned premium. The cancellation will be effective even if we have not made or offered a refund.

   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. No change can be made in the terms of this insurance except with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

**5. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT**

**a.** You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. Notice should include:

**(1)** How, when and where the "occurrence" or "offense" took place;

**(2)** The name and address of any injured persons or witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or "offense."

This requirement applies only when the "occurrence" or "offense" is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership;

**(3)** A member, if you are a joint venture;

**(4)** A member or manager, if you are a limited liability company; or

**(5)** An executive officer or insurance manager, if you are an organization other than a partnership, joint venture or limited liability company.

**b.** If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership;

**(3)** A member, if you are a joint venture;

**(4)** A member, if you are a limited liability company; or

**(5)** An executive officer or insurance manager, if you are an organization other than a partnership, joint venture or limited liability company.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit";

PT-0410 (Ed. 9-97)

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance or any "underlying insurance" may apply;

(5) Cooperate with the "underlying insurers"; and

(6) Comply with the terms of the "underlying insurance."

d. When we believe that a claim may exceed the "underlying insurance," we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or "offense." In such event, the insured must cooperate with us.

e. No insured will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than first aid, without our consent.

## 6. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this insurance:

a. At any time during the policy period;

b. Up to three years afterward; or

c. Within one year after final settlement of all claims under this insurance.

## 7. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

## 8. LEGAL ACTION AGAINST US

No person or organization has a right under this insurance:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an "agreed settlement" or on a final judgement against an insured obtained after an actual trial. We will not be liable for damages that:

a. Are not payable under the terms of this insurance; or

b. Are in excess of the "applicable limit of insurance."

An "agreed settlement" means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**9. MAINTENANCE OF UNDERLYING INSURANCE**

You shall maintain in force the insurance afforded by each policy listed in the Schedule of Underlying Insurance in the Declarations for the full term of this insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage. Limits of "underlying insurance" will not be reduced except for any reduction or exhaustion of the aggregate limit(s) of insurance due to the payment of claims or defense.

If you fail to comply with the above, this insurance is not invalidated. However, in the event of a loss, we will pay only to the extent that we would have paid had you so complied.

**10. OTHER INSURANCE**

This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply in excess of this insurance.

**11. OUR RIGHT TO RECOVER FROM OTHERS**

If we make a payment under this insurance, the insured will assist us and the "underlying insurer" in recovering what we paid by using the insured's right of recovery. Reimbursement will be made in the following order:

a. First, to any interest (including the insured) who has paid any amount in excess of the limits of this insurance;

b. Next, to us; and

c. Then to any interest (including the insured and the "underlying insurer") as are entitled to claim the remainder, if any.

A different order may apply if agreed upon by all interests. Expenses incurred in the process of recovery will be divided among all interests according to the ratio of their respective recoveries.

**12. PREMIUM**

The first Named Insured is responsible for the payment of all premiums and will be the payee for any return premium.

**13. PREMIUM AUDIT**

When this insurance is written on an adjustable premium basis the following items apply:

a. You must keep records of the information we need for premium computation, and send us copies at such times as we may request.

b. At the close of each audit period we will compute the earned premium for that period.

c. Audit premiums are due and payable on notice to the first Named Insured.

**14. REPRESENTATION**

By accepting this insurance you agree:

a. The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this insurance in reliance upon your representation; and

    d.  Your failure to disclose all hazards existing as of the inception date of the policy shall not in itself prejudice the coverage otherwise afforded by this policy, provided such failure to disclose all hazards is not intentional.

## 15. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

    a.  As if each Named Insured were the only Named Insured; and

    b.  Separately to each insured against whom claim is made or "suit" is brought.

## 16. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS INSURANCE

Your rights and duties under this insurance may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## 17. WHEN LOSS IS PAYABLE

If we are liable under this insurance, we will pay for "ultimate net loss" after:

    a.  (1)  The insured's liability is established by court decision and all appeals are exhausted; or

        (2)  There is a written agreement between the claimant, the insured, any "underlying insurer" and us; and

    b.  The amount of the "applicable underlying limit" is paid by or on behalf of the insured.

We will pay all claims expeditiously provided all terms of this insurance are met.

The insured will reimburse us for any payment we make for damages which are within the "retained limit."

## 18. FIRST NAMED INSURED

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this policy.

## 19. LIBERALIZATION

If we revise this policy form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

## 20. TWO OR MORE POLICIES ISSUED BY US

If this policy or any other blanket excess or umbrella policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "offense," the maximum Limit of Insurance under all these policies shall not exceed the highest applicable Limit of Insurance under any one policy.

## SECTION V - DEFINITIONS

1.  "Advertising injury" means injury arising out of one or more of the following "offenses" committed during the policy period:

    a.  Oral, written, televised or videotaped publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.  Oral, written, televised or videotaped publication of material that violates a person's right of privacy;

c.  Misappropriation of advertising ideas or style of doing business; or

d.  Infringement of copyright, title or slogan.

Such "offenses" must be committed in the course of advertising your goods or products.

2.  "Applicable limit of insurance" means the maximum amount we will pay as damages in accordance with SECTION III - LIMITS OF INSURANCE.

3.  "Applicable underlying limit" means:

a.  If the policies of "underlying insurance" apply to the "occurrence" or "offense," the greater of:

(1)  The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced by payment of claims or defense; or

(2)  The "retained limit" shown in the Declarations; or

b.  If the policies of "underlying insurance" do not apply to the "occurrence" or "offense," the amount stated in the Declarations as the "retained limit."

The limits of insurance in any policy of "underlying insurance" will apply even if:

a.  The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

b.  The "underlying insurer" becomes bankrupt or insolvent.

4.  "Auto" means a land motor vehicle, trailer or semi-trailer.

5.  "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms, other than limits of insurance, of the auto policy of "underlying insurance."

6.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including any resulting disability, humiliation, shock, fright, mental anguish, mental injury, care, loss of services or death.

7.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

8.  "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contact or agreement;

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product" or "your work;" or

b.  Your fulfilling the terms of the contract or agreement.

9.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

All damages arising from continuous or repeated exposure to substantially the same general conditions shall be deemed one "occurrence."

11. "Offense" means any of the offenses listed in the definition of "personal injury" or "advertising injury."

All damages that arise from the same act, publication or general conditions shall be deemed to arise from one "offense" regardless of:

    **a.**  The frequency of repetition;

    **b.**  The number or kind of media used; or

    **c.**  The number of claimants.

12. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    **a.**  False arrest, detention or imprisonment;

    **b.**  Malicious prosecution or abuse of process;

    **c.**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    **d.**  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**  Oral or written publication of material that violates a person's right of privacy; or

    **f.**  Discrimination.  This does not apply:

        **(1)**  To "offenses" committed by or at the direction of the insured; or

        **(2)**  If insurance for such "offense" is prohibited by law.

Such "offenses" must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

13. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**  Products that are still in your physical possession; or

    **(2)**  Work that has not yet been completed or abandoned.

"Your work" will be deemed completed at the earliest of the following times:

    **(1)**  When all of the work called for in your contract has been completed.

    **(2)**  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **(3)**  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

14. "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property; and

PT-0410 (Ed. 9-97)

   b.  Loss of use of tangible property that is not physically injured.

   All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

15. "Retained limit" is the sum stated in the Declarations as such. If the policies of "underlying insurance" do not apply to the "occurrence" or "offense," the insured shall retain this amount as self insurance with respect to:

   a.  "Bodily injury" or "property damage" caused by each "occurrence"; or

   b.  "Personal injury" or "advertising injury" sustained by any one person or organization and caused by an "offense."

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit without our consent; or

   b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits without our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Ultimate net loss" means the sum actually paid or payable due to a claim for which the insured is liable either by a settlement to which we agreed or a final judgement. Such sum will include proper adjustments for recoveries and salvage.

19. "Underlying insurance" means the policies listed in the Schedule of Underlying Insurance and includes:

   a.  Any renewal or replacement of such policies; and

   b.  Any other insurance available to the insured.

20. "Underlying insurer" means any insurer which provides a policy listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

21. "Your product" means:

   a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" and

   b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

BC-7105
(Ed. 7-87)

## AUTO LIABILITY LIMITATION

This insurance does not apply to any liability for "bodily injury," "property damage" or "personal injury" arising out of the ownership, maintenance, operation, use, loading or unloading of any "auto" unless the liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, for the full limit shown, and then only for the hazards for which coverage is afforded by "underlying insurance."

This endorsement must be attached to a Change Endorsement when issued after the policy is written.

BC-7106
(Ed. 12-93)

# GARAGE LIMITATION

This insurance does not apply to:

1.  Any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any "auto" while being used in or while practicing or preparing for any prearranged or organized racing, speed or demolition contest or any stunting activity;

2.  Any liability assumed by you under any contract or agreement; unless the liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, for the full limits shown, and then only for the liability for which coverage is afforded by "underlying insurance."

3.  Any liability coverage for your customers, if your business is an "auto" dealership. This exclusion does not apply if the underlying garage policy listed in the Schedule of Underlying Insurance provides un-limited liability coverage for your customers, for the full limits shown, and then only for the liability for which coverage is afforded by valid and collectible "underlying insurance."

This endorsement must be attached to a Change Endorsement when issued after the policy is written.

BC-7167
(Ed. 5-91)

## AUTO LEASING AND RENTAL EXCLUSION

This insurance does not apply to any liability arising out of the ownership, operation, maintenance, use, loading or unloading, or entrustment to others of any "auto" leased to others by an insured for a period of one year or more, or rented to others by an insured for a period of less than one year. However, this exclusion does not apply to an "auto" rented to a customer of the insured while the customer's "auto" is temporarily left with the insured for service or repair if this "auto" is coverd by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance for the full limits shown, and then only for the liability for which coverage is afforded under the "underlying insurance."

This endorsement must be attached to a Change Endorsement when issued after the policy is written.

This endorsement modifies insurance provided by the following:

## COMMERCIAL UMBRELLA LIABILITY POLICY

BC-7189
(Ed. 9-97)

## EMPLOYER'S LIABILITY EXCLUSION

This insurance does not apply to any liability for "bodily injury" sustained by:

1. An "employee" of yours arising out of and in the course of employment by you; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of 1. above.

This exclusion applies:

1. Whether you may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This endorsement must be attached to a Change Endorsement when issued after the policy is written.

This endorsement applies to **all coverages** provided by the following including any forms or endorsements attached thereto:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**COMMERCIAL BLANKET EXCESS LIABILITY POLICY**

BC-7258
(Ed. 4-98)

# EXCLUSION - YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

The following exclusion is added:

1. This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury" or any other injury, damage, loss or expense arising directly or indirectly out of:

   a. Any actual or alleged failure, malfunction, inability or inadequacy of:

      (1) Any of the following, whether belonging to any insured or to others:

         (a) Computer hardware, including microprocessors;

         (b) Computer application software;

         (c) Computer operating systems and related software;

         (d) Computer networks;

         (e) Microprocessors (computer chips) not part of any computer system;

         (f) Telecommunications equipment; or

         (g) Any other computerized or electronic equipment or components; or

      (2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 1.a.(1) of this endorsement;

      which is in any way related to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   B. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **1.a.** of this endorsement.

   C. Any other act or failure to act by you or for you which is in any way related to any potential or actual problems described in Paragraph **1.a.** of this endorsement.

This endorsement applies to all coverages provided by this policy including all forms and endorsements attached thereto, however this exclusion does not apply to an "auto" that is covered by valid and collectible "underlying insurance."

Includes copyrighted material from Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997